EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
ARTHUR P. BEEVER
Deputy Attorney General
State Bar No. 242040
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5865
 Fax:  (415) 703-1234
 Email:  Arthur.Beever@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **JOE RANDEL JOHNSON,**<br><br>                              Petitioner,<br><br>        **v.**<br><br>**ANTHONY KANE, Warden,**<br><br>                              Respondent. | C 07-4417 JF (PR) |


**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  ARTHUR P. BEEVER
   Deputy Attorney General
6  State Bar No. 242040
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA  94102-7004
     Telephone:  (415) 703-5865
8  Fax:  (415) 703-1234
     Email:  Arthur.Beever@doj.ca.gov
9
   Attorneys for Respondent
10
                    IN THE UNITED STATES DISTRICT COURT
11
               FOR THE NORTHERN DISTRICT OF CALIFORNIA
12
                            SAN JOSE DIVISION
13

14  **JOE RANDEL JOHNSON,**                        C 07-4417 JF (PR)

15                                Petitioner,      **MEMORANDUM OF POINTS
                                                   AND AUTHORITIES IN
16          **v.**                                 SUPPORT ANSWER**

17  **ANTHONY KANE, Warden,**

18                                Respondent.

19

20                          **STATEMENT OF THE CASE**

21          On September 11, 2003, the Monterey County District Attorney charged petitioner in

22  Counts I and II with home invasion robbery (Cal. Penal Code §§ 211, 213(a)(1)(A)), in count III

23  with burglary (Cal. Penal Code § 459), in count IV with aggravated assault (Cal. Penal Code §

24  245(a)(1)), in count V with sale or transportation of a controlled substance (Cal. Health & Safety

25  Code § 11352), in count VI with possession of cocaine base for sale (Cal. Health & Safety Code §

26  11351.5), in count VII with assault by force likely to produce great bodily injury (Cal. Penal Code

27  § 245(a)(1)), and in count VIII with damage of a telephone or power line (Cal. Penal Code § 591).

28  Exh. 1, Clerk's Transcript ("CT") 99-108.  The District Attorney also alleged that petitioner had

1    suffered two prior convictions for sale or transportation of a controlled substance (Cal. Health &

2    Safety Code §§ 11370, 11370.2), served three prior prison terms (Cal. Penal Code § 667.5(b)), and

3    suffered two prior "strike" convictions (Cal. Penal Code § 1170.12).  CT 104-108.

4        A jury convicted petitioner in counts I and II of the lesser included offense of attempted

5    first degree robbery in concert (Cal. Penal Code § 211, 213(a)(1)(A), 664), in count III of burglary,

6    in count IV of aggravated assault, in count V of transportation of a controlled substance, and in

7    count VII of the lesser included offense of misdemeanor assault (Cal. Penal Code § 240).  CT 227-

8    243.  The charge of damaging a telephone or power line (count VIII) was dismissed on motion of

9    the prosecutor.  CT 179.  The trial court found the prior conviction allegations true.  CT 246-250.

10        On June 22, 2004, the trial court sentenced petitioner to an aggregate sentence of 58 years

11    to life in prison.  CT 330, 332.

12        On January 18, 2006, the California Court of Appeal affirmed the judgment of conviction,

13    but remanded the case for resentencing.  Exh. 6.  On April 12, 2006, the California Supreme Court

14    denied review.  Exh. 8.  Petitioner did not seek certiorari review in the United States Supreme Court.

15        On December 26, 2006, petitioner filed a petition for writ of habeas corpus in the

16    California Supreme Court.  Exh. 9.  The California Supreme Court denied the petition on June 13,

17    2007.  Exh. 10.

18        On August 27, 2007, petitioner filed the current petition in this Court.

19                              **STATEMENT OF FACTS**

20        The California Court of Appeal summarized the facts of the crimes as follows.  This

21    summary is presumed correct.  *Hernandez v. Small*, 282 F.3d 1132, 1135 n. 1 (9th Cir. 2002); 28

22    U.S.C. § 2254(e)(1).

23        Defendant and Eugene Bell frequently "got high together."  Bell also borrowed
      money from defendant.  In late March 2002, Bell had been awake for a week using crack
24    cocaine, and he was not getting along with defendant.  After a couple of days of verbal
      conflict between the two men about a debt that defendant alleged Bell owed him,
25    defendant came to Bell's Seaside residence after midnight on March 28 and asked Bell
      to repay him.  Bell declined to do so.  Bell initiated a mutual physical fight during which
26    Bell initially wielded a hammer and possibly a knife.  During this fight, defendant threw
      Bell into a hot water heater.

27

28        Kenneth Collins and Adrian Wilcoxen were present during the fight between
      defendant and Bell.  Collins broke up the fight, and Bell "started yelling he was going to

Memorandum of Points and Authorities - C 07-4417 JF (PR)

call the police." Collins saw defendant grab Bell's telephone off the wall and take it with him when he left Bell's home. Bell suffered a black eye and cuts to his face and head, and he bled "real bad." Bell's telephone, a headset and the telephone cord were found in a paper bag outside a market near Bell's residence.

Defendant was interviewed by the police a day or so after the Seaside incident. He admitted that he had gone to Bell's residence seeking repayment of money Bell owed him. Defendant claimed that Bell had attacked him with a hammer and a knife and attempted to murder him, and he "got no choice but to turn around and defend myself." Defendant admitted he "won" the fight and "beat up" Bell. Defendant insisted he had not taken anything from Bell or from Bell's residence.

Emanuel Arzadon and defendant had been friends for about four months in February 2003 and frequently used drugs together. Arzadon knew defendant as "Joe-Joe." On February 2, 2003, Arzadon was mad at defendant because defendant had brought too many people to Arzadon's Monterey home to use drugs. Arzadon asked defendant to leave his home and take these people with him, but defendant just left the house and stayed in his van across the street. Defendant was waiting for a man named Paul, who was at Arzadon's home, to pay defendant $200 Paul owed defendant. A man named Angelo drove by and gave Arzadon $200 to give to Paul so Paul could repay defendant. Shortly thereafter, Arzadon and Paul were both arrested for being under the influence. Arzadon retained the $200 and did not give it to Paul. Arzadon was released that evening and returned to his home. He used some of the $200 to buy crack cocaine. Defendant came by in the early evening seeking the $200. Arzadon called 911 and demanded that defendant leave. Defendant left.

Well after midnight that night, Arzadon was in the bedroom of his home, and his daughter's friend Juan Matthews was watching television in Arzadon's living room. Yvonne Nelson came to visit Arzadon and went into his bedroom where the two used drugs. A black man, who neither Arzadon nor Matthews knew or could identify (hereafter X), came to the front door several times looking for Nelson, but he was sent away by Arzadon and Matthews. James Allen, who was friendly with both Arzadon and defendant, came by, and, while he and Arzadon were talking in the dining room, X came into the house. Then defendant rushed into the house through the front door and struck Arzadon in the shoulder with a chair. Arzadon ran into the kitchen and was knocked to the floor and punched in the face. One of the men said "[w]here's my money." Defendant and X held Arzadon down, and Arzadon "felt a hand going through my pocket." Arzadon still had some of the $200 he had received from Angelo in his pocket.

Matthews heard loud voices in the kitchen, and he went into the kitchen and saw Arzadon on his back on the floor. One man was holding Arzadon down, and the other two were watching. Matthews did not recognize any of the men and was unable to identify defendant or Allen as one of them. Matthews asked "what are you guys doing." The two men who were watching "rushed" Matthews, and Matthews threw down his leather jacket so that he could defend himself. The two men pushed Matthews to the ground in the living room and held him there. After less than a minute, the third man said "let's go," and the three men left the house. As they were leaving, one of the men who had held Matthews down grabbed Matthews's leather jacket and took it with him.

Arzadon suffered a black eye and a fractured shoulder, and the money he had in his pocket was gone. Arzadon and Matthews looked for Arzadon's telephone, which had been in the bedroom before the attack, so they could call the police, but they could not find the telephone. Arzadon went to a friend's house to call 911. Arzadon reported that a half-hour earlier "three, four black guys jumped me" and "took my phone so I couldn't call out." He identified one of the men who had assaulted him as "JoJo." Arzadon later

1    told the police that defendant had wanted $160 from him. He also stated that Nelson had
2    been holding his phone and calling him names when defendant attacked him and that
     Nelson took the phone with her when she left Arzadon's home.

3        Defendant was arrested on the evening of February 3, 2003, and a small rock of
4    cocaine was found in his hat. When he spoke with the police the next day, defendant said
     that Arzadon had kept money that "Paul" owed defendant that Angelo had delivered to
5    Arzadon to give to Paul to give to defendant. Defendant said that Allen had gone into
     Arzadon's residence seeking the money. Then Arzadon came out into the front yard,
6    refused to give defendant any money and provoked a fight. Arzadon "lost" this fight.
     Meanwhile, Allen was fighting with another man in Arzadon's residence, and Nelson was
7    "watchin'". Defendant denied that he had obtained any money from Arzadon or taken
     anything from Arzadon's residence.

8    Exh. 6 at 2-5.

9                            **STANDARD OF REVIEW**

10        This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

11   ("AEDPA"), which imposes a "highly deferential" standard for evaluating state court rulings and

12   "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537

13   U.S. 19, 24 (2002) (per curiam). Under AEDPA, the federal court has no authority to grant habeas

14   relief unless the state court's ruling was "contrary to, or involved an unreasonable application of,"

15   clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). "The question under AEDPA

16   is not whether a federal court believes the state court's determination was incorrect but whether that

17   determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct.

18   1933, 1939 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (state court opinion must be

19   "objectively unreasonable" to warrant habeas relief). The petitioner bears the burden of showing

20   that the state court's decision was unreasonable. *Visciotti*, 537 U.S. at 25.

21                               **ARGUMENT**

22                                   **I.**

23   **PETITIONER WAS NOT DENIED DUE PROCESS BY THE TRIAL
     COURT FINDING HIM COMPETENT TO STAND TRIAL**
24

25        Petitioner contends he was denied a fair trial and due process as a result of the trial court

26   finding him competent to stand trial. Petition at 7.

27        During petitioner's motion to replace counsel under *People v. Marsden*, 2 Cal.3d 118

28   (1970), which occurred after the verdict, petitioner asserted, "I don't understand nothing going

around me, Your Honor. How many times I got to tell you this? I don't understand nothing." Exh. 11 at 1050-1051. The court then asked what the basis for petitioner's *Marsden* motion was, and petitioner responded:

> What my request is that my counsel, my public defender knew from hearing the tape that I was innocent of all these charges. He heard the tape when Arzadon was talking, but he couldn't use that tape because he didn't know he was being taped when talking. Still proves my innocence of everything, but we couldn't use that tape. At this time, I don't know if I could have got the dude to come in here and testify to that.

Exh. 11 at 1052-1053.

> But now he is willing to come forward and testify to it that Arzadon called him and told him that I didn't do none of that but I'm being charged with this stuff. I'm innocent. I'm being charged with something I didn't do. I never stole nothing in my life, and I ain't never robbed nobody in my life.

Exh. 11 at 1053.

> I feel like I wasn't represented good. I feel like I wasn't represented. That's how I'm feeling. There ain't no way in the world I should be facing all this time for something I didn't do. I feel like you wasn't really trying to find the truth out. You was against me through the whole trial by asking people if I sold them drugs. I don't sell drugs. I don't do that.

Exh. 11 at 1053-1054.

The court asked defense counsel about petitioner's motion, and counsel responded:

> There is one part of that motion which I think is very valid, and that is the [California Penal Code section] 1368 aspect and whether or not there should be some mental evaluation that was done. I thought about it. And I received some documentation as to his brain injury and the scar on his head, and I did make an assessment, and my assessment was that I felt my client was competent. . . . That's something I did not bring to any Court's attention because I didn't think it was an issue.

Exh. 11 at 1055-1056.

> I seriously grappled with it. And to me, in all my meetings with my client and all the times we discussed the matters, I don't have a doubt. . . .

> There's a piece of paper where he actually receives money for his disability. My client is disabled. The disability comes from him being stabbed and having some damage to his brain. But in my discussions with all the matters related to this case, I just did not find in my assessment that his deficiencies rose to the level of being incompetent to stand trial.

Exh. 11 at 1057.

The court concluded that petitioner was competent, declaring:

> Well, from the Court's time with this case and the Court's hearing of the evidence that was presented in this case and from the Court's own observations of the defendant

1    in this case, the Court finds the defendant is competent.  There isn't any doubt in the
2    Court's mind that he is competent within the meaning of [California Penal Code section]
     1368. . . .

3        I've heard you speak today.  There isn't anything that's been said or done that would
4    suggest for a moment that you are not competent to stand trial and have not been
     competent throughout the process.  You are.

5    Exh. 11 at 1058.

6        Defense counsel indicated that he was capable of working with petitioner on the case.

7    Exh. 11 at 1059.  The trial court then denied petitioner's *Marsden* motion.  *Id.*

8        The California Supreme Court's denial of petitioner's claim of incompetence was not

9    objectively unreasonable.  Petitioner appears to be raising both substantive and procedural claims

10   regarding competence, i.e., that he was in fact incompetent to stand trial, and that the trial court

11   failed to conduct an adequate hearing to determine whether he was competent.  *See Boyde v. Brown,*

12   404 F.3d 1159, 1165 n. 6 (9th Cir. 2005).  To be competent to stand trial, a defendant must have

13   "sufficient present ability to consult with his lawyer with a reasonable degree of rational

14   understanding," and have "a rational as well as factual understanding of the proceedings against

15   him."  *Dusky v. United States,* 362 U.S. 402 (1960).  "Requiring that a criminal defendant be

16   competent has a modest aim: It seeks to ensure that he has the capacity to understand the

17   proceedings and to assist counsel."  *Godinez v. Moran*, 509 U.S. 389, 402 (1993); *United States v.*

18   *Hernandez,* 203 F.3d 614, 621 n. 8 (9th Cir. 2000) ("The standard for competence to stand trial

19   requires nothing more than that a defendant have some minimal understanding of the proceedings

20   against him.").  The conviction of a legally incompetent person violates due process, and where the

21   evidence raises a bona fide doubt about the defendant's competency, due process requires that a full

22   competency hearing be held.  *Pate v. Robinson*, 383 U.S. 376 (1966).  The *Pate* hearing is not

23   required absent a "substantial" or "bona fide" doubt of competence.  *Hernandez v. Ylst*, 930 F.2d

24   714, 716 (9th Cir. 1991).  California follows the same standard, under Penal Code sections 1367 and

25   1368.  *See People v. Stankewitz*, 32 Cal.3d 80, 92 (1982).

26       Here, the trial court declared it had no doubt of petitioner's competence, and therefore did

27   not refer petitioner for a mental evaluation.  The state court's determination that a defendant is

28   competent is a factual finding that is presumed correct unless rebutted by clear and convincing

evidence.  28 U.S.C. § 2254(e)(1); *Maggio v. Fulford*, 462 U.S. 111, 117 (1983) (per curiam); *Dennis v. Budge*, 378 F.3d 880, 891 (9th Cir. 2004).  The state court's determination that the evidence did not require a competency hearing is a factual determination that the federal habeas court must defer to unless it is objectively unreasonable.  28 U.S.C. § 2254 (d)(2); *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2003); *Torres v. Prunty*, 223 F.3d 1103, 1105 (9th Cir. 2000).

The trial court's conclusion that petitioner was in fact competent was supported by the court's own observations of petitioner, including petitioner's lucid explanation of the basis for his *Marsden* motion.  *See United States v. Myers*, 993 F.2d 713, 715 (9th Cir. 1993) (judge's personal observations of defendant in court supported finding of competence). Moreover, defense counsel indicated that he had no doubt of petitioner's competence.  *Hernandez v. Ylst*, 930 F.2d at 718; *see Medina v. California*, 505 U.S. 437, 450 (1992) ("defense counsel will often have the best-informed view of the defendant's ability to participate in his defense").  Counsel had investigated petitioner's mental health history, and seriously considered whether that history might suggest petitioner was incompetent.  Exhibit 11 at 1055-1057.  Based on counsel's lengthy discussions with petitioner in preparation for trial, he concluded that petitioner's deficiencies did not rise to the level of incompetence.  *Id*.  That decision was not unreasonable.  A defendant may be competent even where he has cognitive impairment from brain damage, *United States v. Timbana,* 222 F.3d 688, 701 (9th Cir. 2000), is mentally retarded, *Atkins v. Virginia*, 536 U.S. 304, 318 (2003), or has a diagnosed mental disorder, *United States v. Leggett*, 162 F.3d 237, 244 (3d Cir. 1998).  Indeed, counsel's comments showed that petitioner was actually able to understand the proceedings and assist in his defense.  Exhibit 11 at 1056 ("we spent hours preparing for this case, hours literally.  We worked hard.  We worked hard and we worked together to put together a defense for him.").

Petitioner offers no clear and convincing evidence, such as a current expert opinion, to rebut the trial court's factual finding that he was competent.  Nor has he shown on this record that the trial court's decision not to refer petitioner for a mental health evaluation was unreasonable.  Accordingly, there is no basis to overturn the state court's denial of petitioner's claim.

## II.

**PETITIONER WAS NOT DENIED DUE PROCESS BY THE ADMISSION OF ARZADON'S TESTIMONY**

Petitioner contends he was denied a fair trial and due process because the trial court admitted the "tainted" testimony of Arzadon. Petition at 8. He bases this assertion based upon a notarized statement in which Arzadon states that his trial testimony was false and constituted perjury. Exh. 9, Appendix H.

The state Supreme Court's rejection of petitioner's claim was not objectively unreasonable. The knowing use of false or perjured testimony against a defendant to obtain a conviction is unconstitutional. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *see United States v. Agurs*, 427 U.S. 97, 103 (1976). However, subsequent recantation of trial testimony does not render the testimony false. Recantations are viewed with great suspicion, especially where, as here, the original testimony was consistent with the other evidence produced at trial. *Allen v. Woodford*, 395 F.3d 979, 994-995 (9th Cir. 2005); *see* RT 713-715 (out of fear of retaliation, Arzadon wrote letter to petitioner in jail, stating "about that legal matter, I will never go against you. How do you want me to go about this so everything will be dropped?"). In addition, the record of Arzadon's trial testimony refutes his after-the-fact contention that he was "hallucinating as well as hearing voices that where [*sic*] not there" when he testified. Exh. 9, Appendix H at 2. Arzadon responded appropriately at all times during his testimony. RT 555-737; see RT 729 ("I'm not hallucinating because I'm here right now clean and sober"). Moreover, even if Arzadon's trial testimony was false, petitioner makes no assertion that the prosecution knew of its falsity. *Id.* at 995; *Morales v. Woodford*, 388 F.3d 1159, 1179 (9th Cir. 2004). The California Supreme Court's denial of petitioner's claim was therefore not objectively unreasonable.

## III.

**PETITIONER DID NOT RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL**

Petitioner contends his counsel was ineffective in two respects. First, petitioner contends counsel "did not present any motion for expert witnesses as to [petitioner's] competency nor did he

1    present an effective argument to the court on the issue." Petition at 9. Second, counsel "did not

2    interview the victim and present to the court the fact that the victim was willing to [*sic*] may have

3    been blackmailed by the DA to testify as he did." Petition at 9.

4          A convicted defendant who alleges that he has received ineffective assistance of counsel

5    must demonstrate that counsel's performance was deficient and that the deficient performance

6    prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 (1984).

7          The California Supreme Court, in denying petitioner's claim of ineffective assistance of

8    counsel, did not apply the *Strickland* standard to the facts of petitioner's case in an objectively

9    unreasonable manner. *See Visciotti*, 537 U.S. at 24-25. Petitioner has not established either prong

10   of the *Strickland* standard in regard to his first claim of ineffective assistance. Counsel did not

11   perform deficiently in investigating petitioner's competence, as he declared that he had "grappled"

12   with the issue after reviewing the documentary evidence of petitioner's brain damage. Exh. 11 at

13   1055-1057. Nor was any error prejudicial, since the court expressly declared it did not have a doubt

14   of petitioner's competence.

15         The state court also reasonably denied petitioner's second claim of ineffective assistance.

16   There is no evidence that the prosecution blackmailed Arzadon. Arzadon's post-trial statement,

17   attached by petitioner to his state court petition, indicates only that Arzadon "was feeling"

18   threatened by law enforcement and the District Attorney's office, and that the assistant district

19   attorney had "made clear" that a lack of cooperation would be "detramental [*sic*]" to Arzadon's

20   freedom. Exh. 9, Appendix H. As explained above, these allegations must be viewed with

21   suspicion. In any event, counsel was not ineffective because there is simply no way he could have

22   known at the time of trial that Arzadon would recant his testimony six months after testifying. The

23   state court therefore reasonably rejected his argument.

24                                        **IV.**

25   **PETITIONER WAS NOT DENIED DUE PROCESS BY A BIASED**
     **TRIAL JUDGE**

26

27         Petitioner contends he was denied a fair trial and due process because the trial judge was

28   biased against the defense. Petition at 10-11.

Memorandum of Points and Authorities - C 07-4417 JF (PR)

1    Petitioner notes that defense counsel disqualified the original judge assigned to petitioner's

2    case. Petition at 10; CT 122. Petitioner then describes a series of "media investigations" purporting

3    to have uncovered "bad" judges in Monterey County. Petition at 10-11. Petitioner alleges his trial

4    judge to be a "tag" partner of one of the "bad" judges. Petition at 11. He contends his trial judge

5    "denied the motion to sever when he knew that it was improper to do so. He also denied a

6    competency hearing in the fact [*sic*] of overwhelming evidence that such a hearing was necessary

7    for petitioner." Petition at 11.

8    The California Supreme Court's denial of petitioner's claim was not objectively

9    unreasonable. The Due Process Clause guarantees a defendant the right to a fair and impartial judge.

10   *In re Murchison*, 349 U.S. 133, 136 (1955). However, to overturn a conviction based on judicial

11   bias, a petitioner must "overcome a presumption of honest and integrity" on the part of the judge.

12   *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Ortiz v. Stewart*, 149 F.3d 923, 938 (9th Cir. 1998).

13   Petitioner supports his claim of bias with newspaper clippings and charges his trial judge with bias

14   simply because the judge ruled against him on severance and did not conduct a competency hearing.

15   However, as discussed in Arguments I and V, such rulings were not indicative of unconstitutional

16   bias. Indeed, "judicial rulings alone almost never constitute a valid basis for a bias or partiality

17   motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Petitioner is therefore not entitled to

18   relief.

19                                              **V.**

20   **PETITIONER WAS NOT DENIED DUE PROCESS BY THE TRIAL
     COURT'S REFUSAL TO SEVER HIS TWO CASES**

21

22   Petitioner contends he was denied a fair trial and due process when the trial judge refused

23   to allow two trials, one for the charges relating to Bell, and another for the charges relating to

24   Arzadon. Petn. at 12-13.

25   On September 11, 2003, the trial court granted the prosecutor's motion to consolidate.

26   CT 110-111. On February 17, 2004, the trial court denied petitioner's motion to sever. CT 191.

27   The California Court of Appeal rejected petitioner's claim that the trial court erred by

28   refusing to sever the charges. Exh. 6 at 10-15. The court then rejected petitioner's argument that

Memorandum of Points and Authorities - C 07-4417 JF (PR)

1   he was denied due process by the joint trial, concluding that petitioner "has failed to establish that

2   there was a substantial danger of prejudice from a joint trial or that he was actually prejudiced by

3   the joint trial of the two cases." Exh. 6 at 15-17.

4           The state appellate court's conclusion was not objectively unreasonable. The United

5   States Supreme Court has held that "[i]mproper joinder does not, in itself, violate the Constitution."

6   *United States v. Lane*, 474 U.S. 438, 446, n.8 (1986). "Rather, misjoinder would rise to the level

7   of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth

8   Amendment right to a fair trial." *Id.* In *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004), the

9   Ninth Circuit summarized the law relating to severance of charges as follows:

10          We may grant habeas relief on a joinder challenge only "if the joinder resulted in an unfair
            trial. There is no prejudicial constitutional violation unless 'simultaneous trial of more
11          than one offense . . . actually render[ed] petitioner's state trial fundamentally unfair and
            hence, violative of due process.'" *Sandoval v. Calderon*, 241 F.3d 765, 771-772 (9th Cir.
12          2001), *cert. denied*, 534 U.S. 847, 151 L. Ed. 2d 69, 122 S. Ct. 112 (2001) and *cert.
            denied*, 534 U.S. 943, 151 L. Ed. 2d 241, 122 S. Ct. 322 (2001) (quoting *Featherstone v.
13          Estelle*, 948 F.2d 1497, 1503 (9th Cir. 1991)) (omissions and modifications in original).
            The requisite level of prejudice is reached only "if the impermissible joinder had a
14          substantial and injurious effect or influence in determining the jury's verdict." *Sandoval*,
            241 F.3d at 772 (citing *Bean v. Calderon*, 163 F.3d 1073, 1086 (9th Cir. 1998)). In
15          evaluating prejudice, the Ninth Circuit focuses particularly on cross-admissibility of
            evidence and the danger of "spillover" from one charge to another, especially where one
16          charge or set of charges is weaker than another. *See*, *e.g.*, *Sandoval*, 241 F.3d at 772;
            *Bean*, 163 F.3d at 1084.

17

18          Here, the state appellate court reasonably found that there was no "spillover effect" that

19   unfairly strengthened the weaker case, because the jury found petitioner guilty only of the lesser

20   crimes of simple assault in count VII and attempted robbery in counts I and II. "The best evidence

21   of the jury's ability to compartmentalize the evidence is its failure to convict all defendants on all

22   counts." *United States v. Unruh*, 855 F.2d 1363, 1374 (9th Cir. 1987); *Park v. California*, 202 F.3d

23   1146, 1149-1150 (9th Cir. 2000) (defendant could not show trial was unfair due to consolidation of

24   charges because jury acquitted him of two counts).

25          In any event, any error was harmless because it had no substantial and injurious effect on

26   the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see Fry v. Pliler*, 127 S.Ct. 2321

27   (2007). As noted, the jury acquitted appellant of aggravated battery and completed robbery, finding

28   him guilty only of lesser charges. The evidence supporting those convictions was compelling, and

1  there was little risk of one of the cases shocking or inflaming the jury into convicting on the other.

2  Accordingly, no prejudice resulted from the joinder of charges.

3  **VI.**

4  **PETITIONER WAS NOT DENIED DUE PROCESS WHEN THE TRIAL**
   **COURT DID NOT SENTENCE HIM UNDER CALIFORNIA'S**
5  **PROPOSITION 36**

6  Petitioner contends the trial court erred by not considering the possibility of imposing a

7  sentence under California's Proposition 36 for his conviction of possession of transporting a

8  controlled substance.  Petition at 15.

9  The California Supreme Court's rejection of this claim was not objectively unreasonable.

10  At the time of sentencing, petitioner was not eligible for probation under Proposition 36.

11  "Proposition 36 amended state law to require that certain adult drug offenders receive probation,

12  conditioned on participation in and completion of an appropriate drug treatment program, instead

13  of receiving a prison term or probation without drug treatment.  [¶]  Under new Penal Code section

14  1210.1, subdivision (a), a defendant convicted of a nonviolent drug possession offense 'shall'

15  receive probation, provided the defendant is not rendered ineligible under subdivision (b)."  *People*

16  *v. Floyd*, 31 Cal.4th 179, 183 (2003).  Petitioner falls squarely within California Penal Code section

17  1210.1(b)(1) and (2).  He was therefore not entitled to probation under Proposition 36.

18  Even had the trial court misapplied state law, petitioner is not entitled to relief.  "Absent

19  a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does

20  not justify federal habeas relief."  *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994).  Petitioner

21  has not alleged that the sentence he received is fundamentally unfair.  Moreover, any such claim

22  must fail in light of petitioner's extensive criminal history.

23  **VII.**

24  **PETITIONER WAS NOT DENIED DUE PROCESS WHEN THE TRIAL**
   **COURT SENTENCED HIM FOR COMMITTING ATTEMPTED**
25  **ROBBERY IN CONCERT**

26  Petitioner contends he was denied due process when the court failed to vacate the finding

27  that he acted "in concert" during the attempted robberies.  Petn. at 16-20.

28  The California Court of Appeal rejected petitioner's claim.  First, the court noted that

Memorandum of Points and Authorities - C 07-4417 JF (PR)

petitioner's claim was irrelevant, even if meritorious:

> It is notable that the validity of the jury's in concert finding is completely irrelevant in this case. The only difference between an "in concert" attempted first degree robbery and an attempted first degree robbery that was *not* "in concert" is that the "in concert" offense is punishable by 18 months, 3 or 6 years and the other is punishable by 18 months, 2 or 3 years. These punishment provisions had no impact on defendant's sentence because he was punished under Penal Code section 1170.12 and would have received the same 25 years to life sentences for these offenses whether or not they were "in concert."

Exh. 6 at 18. The Court of Appeal then declared petitioner's claim meritless:

> Defendant's assertion is that Allen's acquittal established that only two individuals committed the attempted robberies, and therefore the in concert finding was unsupported. Not so. Although Allen was acquitted, there was evidence that X *and Nelson* participated in the attempted robbery of Arzadon. Nelson arrived in advance of the others, and X came to Arzadon's door several times looking for her. While Nelson was talking to Arzadon and, according to Arzadon, Nelson remained in the house, X entered the house and then defendant rushed in. One of the men said "[w]here's my money," and defendant and X held Arzadon down while one of them put his hand in Arzadon's pocket. At the same time, according to Arzadon, Nelson held Arzadon's phone and called Arzadon names. Nelson then took the phone with her when she left Arzadon's home with defendant and X. As they left, one of the men took Matthews's leather jacket.

> A rational factfinder could have concluded that *Nelson* and X were defendant's co-participants in the attempted robberies of Arzadon and Matthews because each of them assisted him in the crimes. X held Arzadon down, and Nelson encourage defendant and X and took the telephone to prevent Arzadon from summoning the police. A reasonable inference could be drawn that Nelson, defendant and X were acting together when Matthews was assaulted and when Matthews's jacket was taken. The jury's "in concert" finding was supported by substantial evidence.

Exh. 6 at 18-19.

The state appellate court's conclusion was not objectively unreasonable. The United States Supreme Court has held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In *Juan H. v. Allen*, 408 F.3d 1262, 1274-1275 (9th Cir. 2005), the Ninth Circuit explained that "[a]fter AEDPA, we apply the standards of *Jackson* with an additional layer of deference. . . . [W]e must ask whether the decision of the California Court of Appeal reflected an 'unreasonable application of' *Jackson* . . . to the facts of this case."

Here, the state court found sufficient evidence that petitioner had acted in concert. That finding is entitled to deference and was not unreasonable. Further, there was no unreasonable

1  application of United States Supreme Court precedent.  Although the state appellate court's opinion

2  does not provide a statement of the legal standard applied, California expressly follows the *Jackson*

3  standard.  *People v. Johnson*, 26 Cal.3d 557, 575-578 (1980).  More importantly, the reasoning and

4  conclusion of the state appellate court comport with *Jackson*.  *See Early v. Packer*, 537 U.S. 3, 8

5  (2002) (per curiam) (neither citation to, nor awareness of, United States Supreme Court cases is

6  required, "so long as neither the reasoning nor the result of the state-court decision contradicts

7  them").  Petitioner is therefore not entitled to relief.

8  ///

9  ///

10  ///

1

**CONCLUSION**

2
Accordingly, respondent respectfully requests that the petition for writ of habeas corpus

3
be denied.

4
Dated:  April 29, 2008

5
Respectfully submitted,

6
EDMUND G. BROWN JR.
Attorney General of the State of California

7
DANE R. GILLETTE
Chief Assistant Attorney General

8
GERALD A. ENGLER
Senior Assistant Attorney General

9

10
PEGGY S. RUFFRA
Supervising Deputy Attorney General

11
/s/ Arthur P. Beever

12
ARTHUR P. BEEVER
Deputy Attorney General

13
Attorneys for Respondent

14
40244218.wpd
SF2008400820

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum of Points and Authorities - C 07-4417 JF (PR)

1

**TABLE OF CONTENTS**

2

**Page**

3  STATEMENT OF THE CASE ... 1

4  STATEMENT OF FACTS ... 2

5  STANDARD OF REVIEW ... 4

6  ARGUMENT ... 4

7  I.   PETITIONER WAS NOT DENIED DUE PROCESS BY THE
     TRIAL COURT FINDING HIM COMPETENT TO STAND
8    TRIAL ... 4

9  II.  PETITIONER WAS NOT DENIED DUE PROCESS BY THE
     ADMISSION OF ARZADON'S TESTIMONY ... 8

10

11 III. PETITIONER DID NOT RECEIVE INEFFECTIVE
     ASSISTANCE OF COUNSEL ... 8

12 IV.  PETITIONER WAS NOT DENIED DUE PROCESS BY A
     BIASED TRIAL JUDGE ... 9

13

14 V.   PETITIONER WAS NOT DENIED DUE PROCESS BY THE
     TRIAL COURT'S REFUSAL TO SEVER HIS TWO CASES ... 10

15 VI.  PETITIONER WAS NOT DENIED DUE PROCESS WHEN THE
     TRIAL COURT DID NOT SENTENCE HIM UNDER
16   CALIFORNIA'S PROPOSITION 36 ... 12

17 VII. PETITIONER WAS NOT DENIED DUE PROCESS WHEN THE
     TRIAL COURT SENTENCED HIM FOR COMMITTING
18   ATTEMPTED ROBBERY IN CONCERT ... 12

19 CONCLUSION ... 15

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*Allen v. Woodford*
395 F.3d 979 (9th Cir. 2005)                                                8

5

*Boyde v. Brown*
6   404 F.3d 1159 (9th Cir. 2005)                                           6

7

*Brecht v. Abrahamson*
507 U.S. 619 (1993)                                                        11

8

*Christian v. Rhode*
9   41 F.3d 461 (9th Cir. 1994)                                             12

10

*Davis v. Woodford*
384 F.3d 628 (9th Cir. 2003)                                                7

11

*Davis v. Woodford*
12   384 F.3d 628 (9th Cir. 2004)                                          11

13

*Dennis v. Budge*
378 F.3d 880 (9th Cir. 2004)                                                7

14

*Dusky v. United States*
15   362 U.S. 402 (1960)                                                    6

16

*Early v. Packer*
537 U.S. 3 (2002)                                                          14

17

*Fry v. Pliler*
18   127 S.Ct. 2321 (2007)                                                 11

19

*Godinez v. Moran*
509 U.S. 389 (1993)                                                         6

20

*Hernandez v. Small*
21   282 F.3d 1132 (9th Cir. 2002)                                          2

22

*Hernandez v. Ylst*
930 F.2d 714 (9th Cir. 1991)                                             6, 7

23

*In re Murchison*
24   349 U.S. 133 (1955)                                                   10

25

*Jackson v. Virginia*
443 U.S. 307 (1979)                                                     13, 14

26

*Juan H. v. Allen*
27   408 F.3d 1262 (9th Cir. 2005)                                         13

28

**TABLE OF AUTHORITIES**  **(continued)**

1

                                                                                                **Page**

2

3     *Liteky v. United States*
      510 U.S. 540 (1994)                                                                        10

4     *Lockyer v. Andrade*
      538 U.S. 63 (2003)                                                                          4

5

6     *Maggio v. Fulford*
      462 U.S. 111 (1983)                                                                         7

7     *Medina v. California*
      505 U.S. 437 (1992)                                                                         7

8

9     *Napue v. Illinois*
      360 U.S. 264 (1959)                                                                         8

10    *Ortiz v. Stewart*
      149 F.3d 923 (9th Cir. 1998)                                                               10

11

12    *Park v. California*
      202 F.3d 1146 (9th Cir. 2000)                                                              11

13    *Pate v. Robinson*
      383 U.S. 376 (1966)                                                                         6

14

15    *People v. Floyd*
      31 Cal.4th 179 (2003)                                                                      12

16    *People v. Johnson*
      26 Cal.3d 557 (1980)                                                                       14

17

18    *People v. Marsden*
      2 Cal.3d 118 (1970)                                                                        4-7

19    *People v. Stankewitz*
      32 Cal.3d 80 (1982)                                                                         6

20

21    *Schriro v. Landrigan*
      127 S.Ct. 1933 (2007)                                                                       4

22    *Strickland v. Washington*
      466 U.S. 668 (1984)                                                                         9

23

24    *Torres v. Prunty*
      223 F.3d 1103 (9th Cir. 2000)                                                               7

25    *United States v. Agurs*
      427 U.S. 97 (1976)                                                                          8

26

27    *United States v. Hernandez*
      203 F.3d 614 (9th Cir. 2000)                                                                6

28

**TABLE OF AUTHORITIES  (continued)**

Page

*United States v. Lane*
474 U.S. 438 (1986)                                                    11

*United States v. Leggett*
162 F.3d 237 (3d Cir. 1998)                                            7

*United States v. Myers*
993 F.2d 713 (9th Cir. 1993)                                           7

*United States v. Timbana*
222 F.3d 688 (9th Cir. 2000)                                           7

*United States v. Unruh*
855 F.2d 1363 (9th Cir. 1987)                                          11

*Withrow v. Larkin*
421 U.S. 35 (1975)                                                     10

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                                     4, 9

**Constitutional Provisions**

United States Constitution
        Fifth Amendment                                                11

**Statutes**

United States Code, Title 28
        § 2254 (d)(1)                                                  4
        § 2254 (d)(2)                                                  7
        § 2254 (e)(1)                                                  2, 7

California Health and Safety Code
        § 11351.5                                                      1
        § 11352                                                        1
        § 11370                                                        2
        § 11370.2                                                      2

California Penal Code
        § 211                                                          1, 2
        § 213(a)(1)(A)                                                 1, 2
        § 240                                                          2
        § 245(a)(1)                                                    1
        § 459                                                          1
        § 591                                                          1
        § 664                                                          2
        § 667.5(b)                                                     2

**TABLE OF AUTHORITIES  (continued)**

1

**Page**

2

§ 1170.12                                              2
§ 1210.1, subd. (a)                                   12
3       § 1210.1(b)(1) and (2)                                12
§ 1367                                                 6
4       § 1368                                                 6

5

6   **Other Authorities**

7   Antiterrorism and Effective Death Penalty Act of 1996                4, 13

8   Proposition 36                                                          12

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28